## TOMPKINS *v.* THE STATE.

By the Penal Code, § 824, grand jurors who have served at one regular term of the superior court are declared ineligible for jury duty at the next succeeding regular term.

(*a*) In such a case a challenge to the array of the grand jury, made before the indictment is found, should be sustained by the trial judge.

(*b*) Likewise a plea in abatement, filed after the indictment is found and before arraignment of the defendant, based on substantially the same ground, should be sustained.

AUGUST 13, 1912.

Indictment for murder. Before Judge Hawkins. Laurens superior court. May 29, 1912.

*S. P. New, George B. Davis,* and *Fred Kea,* for plaintiff in error.

*T. S. Felder, attorney-general,* and *E. D. Graham, solicitor-general,* contra.

HILL, J. Steve Tompkins was indicted on the charge of murder, and was found guilty by the jury, without recommendation. Before the indictment was found true, the defendant challenged the array of the grand jury on the ground that the same grand jury had served at the regular term of the superior court next preceding that at which the jury was impaneled. The court overruled the challenge. After the indictment was returned the defendant filed a plea in abatement on various grounds, but substantially on the same grounds as the challenge to the array. This plea was also overruled by the court. After verdict, a motion for a new trial was overruled, and the defendant excepted.

Under the system as it existed before the Dublin circuit was created, Laurens county was in the Oconee circuit, and the terms of its superior court were in January and July. Acts 1910, p. 1332. In July, 1911, a grand jury was drawn, which normally would be impaneled at the following January term, 1912. On August 18, 1911, the act was approved which created the Dublin circuit. It did not expressly provide at what term the grand jury which had been previously drawn should be impaneled. It created quarterly sessions for the courts in the Dublin circuit. In Laurens county the sessions were to begin on the fourth Mondays in January, April, July, and October. Acts 1911, p. 81. If nothing more was said, the grand jury would naturally stand for the January term, 1912, at which next following term the grand and traverse jurors would be impaneled according to the general law.

30

The Penal Code, § 822, declares that at the close of each term the judge shall draw grand jurors, but the act creating the Dublin circuit undertook to change this general law. After stating the times for holding court in each of the counties of the circuit, it then contained this clause: "Provided, however, that the grand juries of the counties of this circuit shall not be convened except for the spring and fall terms of the court, unless in the discretion of the presiding judge it shall be deemed expedient to call a special session of the grand jury at some other term." Acts 1911, p. 81, sec. 6. It appears that the grand jury which had been previously drawn was actually impaneled and charged, and served at the January term, 1912, of Laurens superior court. For the April term, 1912, no new grand jury was drawn, but in vacation preceding that term the presiding judge ordered the grand jury which had served at the January term to return and serve at the April term. They were not resworn, or reimpaneled, or recharged, but all served, with the same foreman, except that, there being two vacancies, two talesmen were sworn to fill up the jury.

What possible constructions can be placed upon the proviso of the act of August 18, 1911, as applicable to the grand jury drawn in July of that year? The act not expressly stating at what term they should be impaneled, and they having been drawn for the January term before the new circuit was created, it may be held that they were properly impaneled and sworn, and served at that term, which was the next after they were drawn. Or, under the terms of the act, inasmuch as it is declared that the grand juries of the counties of the circuit shall not be convened except for the spring and fall terms of the court, unless under certain contingencies, it is possible to construe this as meaning that the grand jury previously drawn should be the grand jury for the spring term. If, by virtue of the fact that the grand jury had been drawn in July for the next succeeding term, and by reason of the fact that the act makes no special provision for the session of the previously drawn grand jury, it would take the usual course and be the grand jury for the term succeeding its drawing, then it was the grand jury for the January term and was regularly impaneled at that term. If this be so, and they were legally impaneled and served at that term, then the Penal Code, § 824, declares that "Any juror who has served as a grand or traverse juror at any session of the su-

perior courts, county courts, or city courts in this State shall be ineligible for duty as a juror at the next succeeding term of said superior court, county court, or city court, in which he has previously served: Provided, nothing herein contained shall prevent any traverse juror from serving as a grand juror at the next term of the superior court of his county." So that, if the grand jury were legally impaneled at the January term of Laurens superior court (which seems to be the more probable construction), it was directly in the teeth of the statute if they served at the next succeeding regular term, unless the general law is to be treated as overridden by the last clause in the proviso of the act of August 18, 1911, above quoted. Section 796 of the Penal Code of 1910 does not help the situation; it only makes provision for *adjourned* and *special* terms; and the April term of Laurens superior court was neither, but was a *regular* term, held at the time fixed by law.

If it should be held that the legislature contemplated that the grand jury which was drawn in July, 1911, were not to be impaneled at the January term, or then serve, but that the precepts were to be returnable to the April term, then their whole session in January was unlawful, and the impaneling and service were without authority of law; and inasmuch as they were not reimpaneled and sworn at the April term, they were never lawfully impaneled, sworn, or authorized to serve and find indictments. The proviso which says that the grand jury shall not be convened except for "the spring and fall terms of the court," unless upon a contingency, we take to mean the April and October terms, because these are the only two terms which are held in the spring and fall, respectively, and the act evidently contemplates that something is excluded by the limitation to the spring and fall terms. Thus we arrive at the conclusion, either that the grand jury was not lawfully impaneled at the January term, or that it was. If it was not lawfully impaneled then, it has never been impaneled, because there is no claim that the jurors were reimpaneled, or resworn, at the April term, and grand jurors who have not been lawfully impaneled or sworn have no more authority to find bills of indictment than the same number of citizens outside of the court-house—they are not a grand jury in law. Or else, if they were lawfully impaneled and lawfully served at the January term, under the express provisions of the general law they could not serve at the next suc-

ceeding term. The proviso of the act of August 18, 1911, says, "unless in the discretion of the presiding judge it shall be deemed expedient to call a special session of the grand jury at some other term." What does this mean? Does it mean that, after the grand jury has been lawfully impaneled at the spring and fall term, the judge may call a special session of them at some other term of the same character? Or does it mean that he may call a session of the same grand jury at some other term? Or does it mean that he can summon a grand jury in the regular way at another term; and what terms are meant? Does it mean that in the face of the general law he can, in the Dublin superior courts, have the same grand jury to sit at successive terms? Or does it mean that he can call them at some special or adjourned term, in harmony with the general law? The constitution declares that, so far as regulated by law, the practice in all courts of the same grade or class shall be uniform. Civil Code, § 6527. We do not see how it can possibly be held to be uniformity of practice to prohibit by general law every superior court in the State from allowing the same grand jury to sit at successive regular terms of the court, and yet by the act creating the Dublin circuit to establish that the judge thereof, in his discretion, may have the same grand jury to sit at successive terms of court. The general law says it shall not be done; and if we give that construction to this law, it says it shall be done. It is not easy to harmonize this proviso with the general law in any manner, but it is a well-established rule of construction that if an act of the legislature can properly be given one construction which upholds its constitutionality, and another which would render it unconstitutional, the former is rather to prevail. Perhaps this should be carried a step farther, so as to give the act as nearly a constitutional construction as possible. At any rate, it more nearly approximates the general law to hold that the provision that the judge can call a special session of the grand jury "at some other term" means some other term at which, under the general law, it is competent to call in the same grand jury. At least, to hold that under this law the same grand jury can serve at successive regular terms of court, when this is positively forbidden by the general law, would be to give to this provision in the act creating the Dublin circuit a construction which would render it clearly unconstitutional. So that, whatever construction may be given it, it seems to us that the indictment found by the grand jury in the present

case was unlawful, and that the judge erred in not sustaining the challenge to the grand jury, and, after overruling it, likewise erred in overruling the plea in abatement.

This decision is not based upon a mere technicality, but upon a substantial violation of the plain terms of the statute which declares that no grand juror shall serve at the next succeeding term of court to that at which he has already served as a grand juror. In *McFarlin* v. *State,* 121 *Ga.* 329, 330-331 (49 S. E. 267), this court, speaking through Justice Lamar (now Associate Justice of the Supreme Court of the United States), in reference to the provision of law that grand jurors shall not render consecutive service, said: "The language of the statute and the public policy to be subserved apply as well to grand as to petit jurors. It is intended as a relief, and to equalize jury duty. But it is also intended to prevent the same persons from constantly serving, whether they wish to or not. One grand jury may return no bill. Grand juries are charged with many important public duties. The same facts in both classes of subjects may come before the succeeding body, and the public is entitled to a complete change of membership from term to term. Such is the language of the law; and where the objection is seasonably made, advantage can be taken of the fact that the body has not been duly constituted." And in *Finnegan* v. *State,* 57 *Ga.* 427, where the judgment was reversed because the court sustained the demurrer filed to a plea in abatement based on an alleged illegal drawing of the grand jury, Chief Justice Warner (p. 430) said: "Whenever the State undertakes to deprive one of its citizens of his life or liberty, it is the duty of the courts to see that it is done in accordance with the laws of the land, and not otherwise. In the administration of criminal law, judicial discretion should not be tolerated. The law, as it is prescribed by the supreme power of the State, should be the rule of conduct for the courts as well as for the citizen." It follows from what has been said above, that the court erred in overruling the challenge to the array of the grand jury and the plea in abatement. The ruling here made makes it unnecessary to consider the other assignments of error, inasmuch as it renders the whole proceeding in the court below nugatory.

*Judgment reversed. All the Justices concur.*

ATKINSON, J. I concur in the result, but not in all that is said in the opinion.