## LONG v. THE STATE.

1. Under the act of July 28, 1921 (Acts 1921, p. 135), the judge of Walton superior court was authorized to require the grand jury which was sworn, impaneled, and served at the August term, 1923, of that court to attend and serve at the November term, 1923, of the court; and such grand jury so serving at the.latter term was a lawful grand jury, and indictments returned by, them were not void.
2. Said act, being a general law, modified, so far as jurors serving in Walton superior court were concerned, the provision of section 824 of the Penal Code, which declares, that grand juries serving at one term are ineligible to serve at the succeeding term.

No. 4464. APRIL 15, 1925.

The Court of Appeals (in Case No. 15421) requested instruction from this court on the following questions:

1. At the May term, 1923, of Walton superior court a grand jury was duly and regularly drawn for service at the August term, 1923, and "was duly and legally impaneled, sworn, organized, and charged by the court, and discharged the duties incumbent upon grand juries at said August term, 1923, of said court, and was excused from further service at said term of court as such grand jury at the conclusion of its service by the court," and "pursuant to order of the court the same grand jury that had been drawn, impaneled, sworn, organized, charged, and served as such at the said August term, 1923, of said court, reassembled, and, without being resworn or reimpaneled or recharged, served (except a few who were disqualified and replaced by talesmen) as a grand jury at the November term, 1923, of said court, the same being the term of court next succeeding the said August term, 1923, of said court." Was the said body of men so called together for service at the November term of said court a legally constituted grand jury and authorized to return indictments? Or had this body "no more authority to find bills of indictment than the same number of men outside the courthouse," and were indictments returned by said body "null and void"?

2. If the answer to the preceding question is that indictments returned by a grand jury so organized are void, where the accused (so indicted) files a plea in abatement and attacks such an indictment as void, is it necessary to allege in the plea that the accused had no opportunity to file a challenge to the array or file a plea in abatement before the return of the indictment?

3. If the answer to the first question above is that indictments returned by a grand jury organized as shown by said question are void, and the plea shows that the grand jury returned against the accused a "special presentment," is it necessary that the plea allege that the accused "had no opportunity to file a challenge to the array of the grand jury, and that he could not have made the challenge before the return of the indictment," or that "he did not know and could not have known that he would be indicted at such term by said grand jury"?

See, in connection with the above questions: Ga. Laws 1921, p. 135, sec. 3; *Reich* v. *State,* 53 *Ga.* 73 (2), 74 (2) (21 Am. R. 265); *Finnegan* v. *State,* 57 *Ga.* 428; *Betts* v. *State,* 66 *Ga.* 514 (6); *Lascelles* v. *State,* 90 *Ga.* 372 (3), 374 (16 S. E. 945, 35 Am. St. R. 216); *Edwards* v. *State,* 121 *Ga.* 590 (2) (49 S. E. 674); *Folds* v. *State,* 123 *Ga.* 167 (2) (51 S. E. 305); *Parris* v. *State,* 125 *Ga.* 777 (3, 4) (54 S. E. 751); *Tompkins* v. *State,* 138 *Ga.* 465 (75 S. E. 594); *Lynn* v. *State,* 140 *Ga.* 387 (79 S. E. 29); *Payne* v. *State,* 29 *Ga. App.* 156 (114 S. E. 226).

*Orrin Roberts* and *H. H. Chandler,* for plaintiff in error.

*W. O. Dean, solicitor-general,* contra.

HINES, J. 1. The grand jury drawn for service at the August term, 1923, of Walton superior court, the same having been duly and legally impaneled, sworn, organized, and charged by the court, and, after having discharged the duties incumbent upon it at said term, having been excused by the court from further service at said term at the conclusion of its labors, could be required by the judge of said court to attend at the November term, 1923, of said court to perform such duties as might be required of it at the November term, 1923, of said court. Such procedure is specially provided for by section 3 of the act of July 28, 1921, providing for holding four terms a year of Walton superior court, prescribing the time for holding the same, and further prescribing when and how grand juries should be required to attend said court. Acts 1921, p. 135. The grand jury at the August term, 1923, of said court, being required by the judge to attend at the November term, 1923, thereof, was a legally constituted grand jury and was authorized to return indictments. Being thus legally convened at said November term, 1923, of said court, it was not a body with "no more authority to find bills of indictment than the same number of

men outside the court-house," and indictments returned by said body were not null and void. This is so because this grand jury so functioning at the November term, 1923, of said court was legally and properly functioning as provided by law. This body was not a mob. It was the creature of law. But it is said that under the Penal Code, § 824, "Any juror who has served as a grand or traverse juror at any session of the superior courts . . shall be ineligible for duty as a juror at the next succeeding term of said superior court;" and that for this reason grand jurors who served at the August term were ineligible to serve at the November term of the court. This contention is without merit. The above act fixing the terms of Walton superior court and providing for the attendance of grand juries thereat is a general law. *Burge* v. *Mangum,* 134 *Ga.* 307 (67 S. E. 857). Being a general law, it modifies and changes the above section of the Penal Code, in so far as the superior court of Walton County is concerned. The power of the legislature by a general law to change or modify a previous general law can hardly be questioned. This section of the Penal Code is not like the laws of the Medes and Persians, which were unchangeable.

Nothing in *Tompkins* v. *State,* 138 *Ga.* 465 (supra), is in conflict with what is ruled in this case. In that case this court was dealing with a statute providing for four terms of Laurens superior court to be held upon the fourth Monday in January, April, July, and October. That act provided that grand juries could only be drawn for the spring and fall terms of that court. A grand jury had been drawn, impaneled, and sworn for the January term, 1912, of that court, and, after having served at that term, was excused and discharged. In vacation thereafter the judge, instead of drawing, as required by law, a grand jury to serve at the April term, 1912, of said court, passed an order requiring the grand jury which had served at the January term of the court to attend as a grand jury at the April term. This action of the judge was not only without authority of law, but in the face of the statute which required the judge to draw a grand jury for the April term of that court. The judge having no authority to require the grand jury at the January term to attend at the following April term, this court properly held that these grand jurors, who had served at the January term, were ineligible to serve at the April term under

the above section of the Penal Code. The ruling made in the *Tompkins* case is correct; but that case, under its facts, is easily and plainly distinguishable from the instant case. So we are of the opinion that the first question propounded by the Court of Appeals should be answered in the negative.

2. Under the above ruling, it becomes unnecessary to answer the second and third questions propounded by that court.

*All the Justices concur except Russell, C. J., and Hill, J., dissenting.*

HILL, J. I am of the opinion that the body of men called together for service at the November term of court was not a legally constituted grand jury, and were not authorized to return indictments, and that such indictments were null and void. In *Tompkins* v. *State*, 138 *Ga*. 465 (supra), this court held: "By the Penal Code, § 824, grand jurors who have served at one regular term of the superior court are declared ineligible for jury duty at the next succeeding regular term. (*a*) In such a case a challenge to the array of the grand jury, made before the indictment is found, should be sustained by the trial judge. (*b*) Likewise a plea in abatement, filed after the indictment is found and before arraignment of the defendant, based on substantially the same ground, should be sustained." In the opinion it was said: "Thus we arrive at the conclusion, either that the grand jury was not lawfully impaneled at the January term, or that it was. If it was not lawfully impaneled then, it has never been impaneled, because there is no claim that the jurors were reimpaneled, or resworn, at the April term, and grand jurors who have not been lawfully impaneled or sworn have no more authority to find bills of indictment than the same number of citizens outside of the court-house—they are not a grand jury in law. Or else, if they were lawfully impaneled and lawfully served at the January term, under the express provisions of the general law they could not serve at the next succeeding term. The proviso of the act of August 18, 1911, says, 'unless in the discretion of the presiding judge it shall be deemed expedient to call a special session of the grand jury at some other term.' What does this mean? Does it mean that, after the grand jury has been lawfully impaneled at the spring and fall terms, the judge may call a special session of them at some other term of the same character? Or does it mean that he may call a session of

the same grand jury at some other term? Or does it mean that he can summon a grand jury in the regular way at another term; and what terms are meant? Does it mean that in the face of the general law he can, in the Dublin superior courts, have the same grand jury sit at successive terms? Or does it mean that he can call them at some special or adjourned term, in harmony with the general law? The constitution declares that, so far as regulated by law, the practice in all courts of the same grade or class shall be uniform. Civil Code, § 6527. We do not see how it can possibly be held to be uniformity of practice to prohibit by general law every superior court in the State from allowing the same grand jury to sit at successive regular terms of the court, and yet by the act creating the Dublin circuit to establish that the judge thereof, in his discretion, may have the same grand jury to sit at successive terms of court. The general law says that it shall not be done; and if we give that construction to this law, it says it shall be done. It is not easy to harmonize this proviso with the general law in any manner, but it is a well-established rule of construction that if an act of the legislature can properly be given one construction which upholds its constitutionality, and another which would render it unconstitutional, the former is rather to prevail. Perhaps this should be carried a step farther, so as to give the act as nearly a constitutional construction as possible. At any rate, it more nearly approximates the general law to hold that the provision that the judge can call a special session of the grand jury 'at some other term' means some other term at which, under the general law, it is competent to call in the same grand jury. At least, to hold that under this law the same grand jury can serve at successive regular terms of court, when this is positively forbidden by the general law, would be to give to this provision in the act creating the Dublin circuit a construction which would render it clearly unconstitutional. So that, whatever construction may be given it, it seems to us that the indictment found by the grand jury in the present case was unlawful, and that the judge erred in not sustaining the challenge to the grand jury, and, after overruling it, likewise erred in overruling the plea in abatement."

The act of 1921 (Ga. L. 1921, p. 135), providing for holding four terms a year of the superior court of Walton County, to pre-

scribe the time for holding the same, to prescribe when and how grand jurors shall be required to attend said court, and for other purposes, provides by section 3 that the judge shall only draw a grand jury for the February and August terms of said court; provided, that the presiding judge, in his discretion, may require the attendance of the grand jury at the May and November terms, or either of them, if the business of the court should require it; but the duties of the said grand jury shall not require them to perform any other service at said May and November terms than they shall be by the presiding judge especially charged with. The above act is very similar to the act of August 18, 1911, which created the Dublin circuit and which was construed in the *Tompkins* case, supra, and which was considered in the decision reached in that case. The facts of the two cases are therefore substantially the same, and can not be successfully distinguished. There is nothing ruled in the case of *Lynn* v. *State,* 140 *Ga.* 387 (supra), which is inconsistent with the ruling made in the case of *Tompkins* v. *State.* There is nothing ruled in the case of *Bird* v. *State,* 142 *Ga.* 596 (83 S. E. 238, Ann. Cas. 1916C, 205), inconsistent with the ruling made above. There it was held that the reconvoking of the same grand jury was legal, and that an indictment properly found by them against the defendant was also legal for the reason that it was the same grand jury which had been properly drawn, summoned and impaneled to serve during the *same term of court.*

No constitutional question was raised in the *Tompkins* case, 138 *Ga.* 465 (supra), and none is raised by the record in the present case. In the *Tompkins* case the reference to the constitution is only mentioned by way of argument, and to point out a well-recognized rule of construction, that if an act of the legislature can properly be given one construction which upholds its legality and another which would render it illegal, the former is rather to prevail. All discussion and citation of authorities in the majority opinion in the present case, on the basis that a constitutional question is raised by the record, is beside the question. In the *Tompkins* case the court merely construed the act under consideration and the order of the judge thereunder. Here we are construing the act of 1921, supra, which declares that there shall be only "a grand jury for the February and August terms of court," and the

ruling of the court thereunder. The act of 1921, by section 3, provides "that the judge shall only draw a grand jury for the February and August terms of said court; provided, that the presiding judge, in his discretion, may require the attendance of the grand jury at the May and November terms, or either of them, if the business of the court should require it; but the duties of the grand jury shall not require them to perform any other service at the said May and November terms than they shall be by the presiding judge especially charged with." The act of 1911 (Acts 1911, p. 81), which created the Dublin circuit and which provided for four terms of court in each year in Laurens County, provided as follows: "that the grand juries of the counties of this circuit shall not be convened except for the spring and fall terms of the court, unless in the discretion of the presiding judge it shall be deemed expedient to call a special session of the grand jury at some other term." In the *Tompkins* case this court held that the indictment found by the grand jury in that case under the act of 1911 was unlawful, and that the judge erred in not sustaining the challenge to the grand jury. It was further said in the opinion rendered in that case that "this decision is not based upon a mere technicality, but upon a substantial violation of the plain terms of the statute which declares that no grand juror shall serve at the next succeeding term of court to that at which he has already served as a grand juror. In *McFarlin* v. *State,* 121 *Ga.* 329, 330-331 (49 S. E. 267), this court, speaking through Justice Lamar (now Associate Justice of the Supreme Court of the United States), in reference to the provision of law that grand jurors shall not render consecutive service, said: 'The language of the statute and the public policy to be subserved apply as well to grand as to petit jurors. It is intended as a relief, and to equalize jury duty. But it is also intended to prevent the same persons from constantly serving, whether they wish to or not. One grand jury may return no bill. Grand juries are charged with many important public duties. The same facts in both classes of subjects may come before the succeeding body, and the public is entitled to a complete change of membership from term to term. Such is the language of the law; and where the objection is seasonably made, advantage can be taken of the fact that the body has not been duly constituted.' And in *Finnegan* v. *State,* 57 *Ga.* 427, where the judgment was reversed because the court sus-

tained the demurrer filed to a plea in abatement based on an alleged illegal drawing of the grand jury, Chief Justice Warner said (page 430), 'Whenever the State undertakes to deprive one of its citizens of his life or liberty, it is the duty of the courts to see that it is done in accordance with the laws of the land, and not otherwise. In the administration of criminal law, judicial discretion should not be tolerated. The law, as it is prescribed by the supreme power of the State, should be the rule of conduct for the courts as well as for the citizen.' It follows from what has been said above that the court erred in overruling the challenge to the array of the grand jury and the plea in abatement."

It will be observed from reading the act of 1921, requiring a grand jury to be drawn for the February and August terms of the superior court of Walton County, the same grand jury may also be required to attend at the May and November terms, or either of them, if the business of the court should require it. This provision of section 3 of the act does not and can not apply to any other grand jury in any other county of the circuit, or any other county within the State; and therefore I reach the conclusion that the act can not be general in its operation, but is only special or local in its application, and can not supersede the plain terms of the statute which declares that no grand juror shall serve at the next succeeding term of court to that at which he has already served as a grand juror. In my opinion the case comes clearly within the ruling made in the *Tompkins* case, supra, which is a full-bench decision. The case of *Burge* v. *Mangum,* 134 *Ga.* 307 (supra), is distinguishable from the present case.

2. In the case of *Reich* v. *State,* 53 *Ga.* 73 (2) (supra), this court held that "It is a good special plea to an indictment, if made on arraignment, that one of the grand jurors who found the indictment or special presentment was an alien and not qualified to sit as a grand juryman." In delivering the opinion of the court McCay, Judge, said: "We think the plea that one of the grand jurors was not a citizen is a good plea. Section 3916 of the Code clearly contemplates that a grand juryman must be a citizen, and whilst the constitution does not, in terms, require it, and only uses the word 'persons,' yet there is nothing in this inconsistent with the Code, and this has long been the law of this State. It was also the common law: 1 Chitty C. L. 307; 5 Bacon Ab. 312; 1

Bishop Criminal Law, 795; 3d Coke Inst. 34; 9 Texas, 65; 5 Porter, Ala., 484. So, too, we think the objection may be taken by special plea. There are some authorities seemingly to the effect that the challenge must be to the jury before bill filed; but it seems to us that this is unreasonable. How is a defendant to know that this secret inquest is proceeding to find a bill against him? Whatever objections there may be to a grand juror that a party can make, ought (and this has always been the practice in this State) to be made on the trial, and before pleading to the merits, and such, we think, was the practice in England: 1 Chitty C. Law, 307; Bacon Ab., Juries, (a) 727."

In *Lascelles* v. *State, 90 Ga.* 347 (3) (supra), it was held: "A plea in abatement to a bill of indictment, or a motion to quash the bill, is not sustainable which sets up that a member of the grand jury that found the bill was related by affinity to the prosecutor within the fourth degree, his wife being a second cousin of the prosecutor. Such relationship, according to the settled law, belongs to the same class of causes of challenge as does the fact of service by the juror on a previous trial or investigation of the same case or matter in controversy." In the opinion, delivered by Mr. Justice Lumpkin speaking for the court, it was said: "Another objection raised by motion to quash and plea in abatement was, that a member of the grand jury that found the bill was related by affinity to the prosecutor within the fourth degree, his wife being a second cousin to the prosecutor. According to the principle ruled in former decisions of this court, a plea in abatement or motion to quash, based upon objections of this character, is not sustainable, at least if the accused has had an opportunity to make the question by challenge before the finding of the indictment. *Betts* v. *State, 66 Ga.* 508; *Williams* v. *State, 69 Ga.* 12; *Lee* v. *State,* Id. 705; *Turner* v. *State, 78 Ga.* 174. In this case the accused was apprised by the warrant for his arrest, several days before the indictment was found, that the case would go before the grand jury, and it is not shown in his plea or motion to quash that he had no opportunity to make the objection by challenge. The case of *Reich* v. *State, 53 Ga.* 73, is distinguishable from this case and the others cited. There the grand juror was an alien, and was therefore incompetent to serve in any case. Not being a citizen, he lacked one of the necessary qualifications prescribed by law.

Here the grand juror, so far as appeared, had all the legal qualifications to act generally in that capacity, but was subject to objection merely because of implied bias in the particular case. Moreover, in the *Reich* case, supra, the charge was preferred by special presentment; so there was no reason to suppose that the accused could have anticipated the action of the grand jury. The distinction between grounds of challenge *propter affectum,* or for favor, and grounds *propter defectum,* which go to the lack of capacity to serve in any case, and which would render the accusation void if successfully maintained, is noted in the case of *Betts,* supra. It was there held that 'it was not a good plea in abatement to an indictment, that one of the grand jurors who found it had previously been a member of the coroner's jury who sat upon the corpse and who found that the deceased had come to his death at the hands of the present defendant, and that the killing was murder.' In the *Williams* case, supra (5c), it was held that 'if a defendant in a criminal case can except to a grand juror at all, on the ground that he has formed and expressed an opinion, it should be done before the true bill is found, and not on the trial thereunder. Certainly so where the defendant had notice of the pending consideration of his case by the grand jury, by reason of having been previously placed under bond.' 'The truth is,' said Jackson, C. J., in the opinion in that case, 'it is a matter of comparatively little importance that grand jurors should not have formed opinions, because they only put the party on trial, and that after hearing only one side of the case. If, however, it is deemed important in a particular case to fight the prosecution *in limine,* diligence requires that the challenge be made before the bill is found. In this case the party could have done so.'" For a further discussion of the question see the remainder of the opinion on page 373.

In *Edwards* v. *State,* 121 *Ga.* 590 (2) (supra), it was held: "There is no error in overruling a plea in abatement to a bill of indictment, based on the ground that one of the grand jury that found the bill had not resided within the county for the period of six months, when it is not made to appear that the accused did not have full notice and opportunity to make the question by challenge before the finding of the indictment. *Lascelles* v. *State,* 90 *Ga.* 347; *Fisher* v. *State,* 93 *Ga.* 309." See also *Folds* v. *State,* 123 *Ga.* 167 (2) (supra). In *Parris* v. *State,* 125 *Ga.* 777 (3)

(supra), it was held: "A grand juror disqualified *propter defectum* must be challenged by the accused before the finding of the indictment, unless it appears that he did not have full notice or opportunity to make the challenge at that time." As pointed out in the *Lascelles* case, supra, the *Reich* case is distinguishable from that, and the other cases cited in the *Lascelles* case, and the cases to the same effect, decided subsequently to those cases.

It follows from what has been said above, and the cases cited, that where, in the circumstances stated in the question propounded by the Court of Appeals, the accused files a plea in abatement and attacks such an indictment as void, it is necessary to allege in the plea that the accused had no opportunity to file a challenge to the array before the return of the indictment.

I am also of the opinion that on a plea in abatement, showing that the grand jury returned against the accused a "special presentment" it is not necessary that the plea allege that the accused "had no opportunity to file a challenge to the array of the grand jury and that he could not have made the challenge before the return of the indictment," or that "he did not know, and could not have known, that he would be indicted at such term by such grand jury." *Reich* v. *State, 53 Ga.* 73 (2) (supra).